HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANNY SNAPP,

        Plaintiff,

v.

BURLINGTON NORTHERN SANTA FE RAILWAY,

        Defendant.

CASE NO. 10-CV-05577-RBL

**ORDER GRANTING SUMMARY JUDGMENT**

## I.    INTRODUCTION

This matter comes before the Court on Defendant Burlington Northern Santa Fe Railway's ("BNSF") Motion for Summary Judgment. (Dkt. #27). Plaintiff Danny Snapp, appearing *pro se*, alleges that BNSF discriminated against him, invaded his privacy, and wrongfully discharged him. Snapp claims that BNSF violated the Americans with Disability Act, 42 U.S.C. 12101, when it terminated and refused to re-instate him. For the reasons set forth below, BNSF's motion for summary judgment is GRANTED.

## II.    FACTUAL BACKGROUND

Snapp started working for BNSF in 1971.[1] Snapp became a member of the United Transportation Union ("UTU") (formerly the Brotherhood of Railroad Clerks) and enjoyed

---

[1] Snapp failed to respond to BNSF's motion for summary judgment. The Court must nevertheless consider the facts in the light most favorable to the non-moving party.

seniority at the railroad as a clerk and yardmaster.  In 1986, BNSF promoted Snapp to a management position as a Trainmaster.  While in management positions, Snapp was not a member of any union.

In 1994, Snapp learned that he suffered from obstructive sleep apnea.  His sleep apnea caused him to answer work-related calls in the middle of the night that he would not remember.  In 1996 and 1998, Snapp took paid leaves of absences to undergo facial surgery attempting to rectify his sleep apnea.  BNSF notified Snapp that his condition prevented him from performing his employment duties in a safe and efficient manner.  BNSF advised Snapp that he could not return to work until he had a medical release to return to work.  (Snapp Dep. 87:24-88:3).

In June 1999, Snapp applied for and later received occupational disability from Cigna/Life Insurance Company of North America, BNSF's third-party disability benefits administrator.  During this time, Snapp maintains that he never authorized the release of any of his medical records.  (Pl.'s Second Am. Compl. at 5.8).

But in November 2005, Cigna terminated Snapp's long-term disability benefits because he refused to undergo a sleep study to determine whether he still qualified for the program.  In January of 2006, Snapp appealed Cigna's termination of benefits.  Cigna upheld the decision to deny Snapp's claims because he "did not substantiate the acuteness of his condition or loss of function." (Dep. Ex. 159).

On January 2, 2008, after belatedly learning that Snapp's disability benefits ended, BNSF notified him that he was entitled to 60 days unpaid leave in order to secure a position with BNSF.  BNSF's Long Term Disability Program contains a Return to Work Policy, outlining Snapp's options:

> BNSF is under no obligation to provide you with a salaried position if you are released to return to work by your Physician. . . . You will have 60 days from the date you are approved by the Claims Administrator to return to work to secure a position with BNSF. . . . If after 60-days, you do not obtain a position with BNSF you can choose to retire if you are eligible, or you will be terminated from service.
>
> (Dep. Ex. 153 at 5/BNSF 53).

BNSF's letter warned that if Snapp did not obtain a position with the railroad, he would be terminated from service.  (Dep. Ex. 160).

On February 28, 2008, Snapp attempted to return to work as a yardmaster, which is a union position. But neither BNSF nor the UTU had any record that Snapp was eligible to work as a yardmaster. (Dep. Ex. 162). The Yardmaster Agreement contained rules regarding maintaining union seniority and exercising that seniority when returning to work after a leave of absence. According to the agreement rules, Snapp did not maintain his Yardmaster seniority; since 1987, he worked as a trainmaster, a management position, meaning that he could only return to fill management positions at BNSF. Snapp admits that he attempted to fill a yardmaster position, not a management position. (Pl.'s Second Am. Compl. at 5.12).

On March 3, 2008, BNSF terminated Snapp from employment for failure to secure a position in BNSF. BNSF also sent Snapp supporting documentation from UTU confirming that he lacked Yardmaster seniority. (Dep. Ex. 163).

Snapp filed various complaints against Cigna, the UTU, and BNSF. Furthermore, UTU's Public Law Board determined that Snapp was not entitled to lost earnings after BNSF terminated him because Snapp "had forfeited his train service in a failure to mark up for service as directed." (Dep. Ex. 95).

Snapp brought this suit and makes five claims against BNSF: (1) violation of the Americans with Disabilities Act ("ADA"); (2) violation of the Age Discrimination in Employment Act; (3) "Invasion of Privacy, RCW 70.02, et seq."; (4) breach of confidence; and (5) wrongful discharge. (*See* Pl.'s Second Am. Compl.). Snapp withdrew his claim for age discrimination, and now BNSF requests summary judgment on all remaining claims.

Snapp's key factual argument is simple: BNSF intentionally discriminated against him and refused to reinstate him because of his disability.

Snapp also maintains that BNSF invaded his privacy when it improperly shared his medical records. The complaint alleges that BNSF intentionally accessed Snapp's medical records without his approval. Snapp also alleges that BNSF shared his personal medical records with co-workers, human resources, and other management personnel without his consent.

BNSF argues that it paid Snapp's long-term benefits for years and gave him the opportunity to return to work once his benefits ended. According to its Return to Work Policy, BNSF gave 60 days to Snapp to secure a position at BNSF, which he failed to do. BNSF maintains that it terminated Snapp according to standard procedures.

## III.   DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### 1.   American with Disabilities Act.

Snapp claims that BNSF discriminated against him, in violation of the Americans with Disabilities Act, in one or more of the following ways:

    (a) By failing to engage in the interactive process in good faith;

    (b) By failing to reasonably accommodate him;

    (c) By treating him differently than similarly situated non-disabled employees; and/or

    (d) By refusing to hire him, reinstate and/or discharging him because of his disability due to his need for accommodation, and/or because it perceived him to be a disabled person, or having a record of having a disability, all based on BNSF's refusal to allow Snapp to return to work.

(Pl.'s Second Am. Compl. at ¶ 6.3).

To state a prima facie case under the ADA, Snapp was required to show that: (1) he was a disabled person within the meaning of the ADA; (2) he was a qualified individual, meaning he could perform the essential functions of his job; and (3) BNSF terminated him because of his disability. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999) (citing 42 U.S.C. § 12112(a)).

Snapp inadequately followed BNSF's protocol, and BNSF terminated him by standard procedure. The record indicates that Snapp was a good employee for BNSF. For many years, BNSF supported Snapp throughout his medical leave by paying his long-term disability payments. But after Snapp refused to undergo a test to see if he still qualified for those benefits, Cigna terminated him from his benefits. Nearly three years later, BNSF notified Snapp of its Return to Work Policy. Consequently, Snapp tried to fill a position that he was ineligible for, BNSF's 60 day policy expired, and BNSF terminated him from employment.

Snapp has not raised a genuine issue of material fact as to whether his termination—after his failure to fill an available position with BNSF—was unreasonable. In other words, BNSF did not terminate Snapp because of his disability, but for its standard business protocol. Therefore, BNSF's Motion for Summary Judgment on Snapp's ADA violation claim is GRANTED.

### 2. Wrongful Discharge.

Snapp's second claim is for wrongful discharge in violation of public policy. The Court uses four elements to analyze such claims: (i) the plaintiff must prove the existence of a clear public policy (the clarity element); (ii) that discouraging the conduct in which the plaintiff engaged would jeopardize the public policy (the jeopardy element); (iii) that the public-policy-linked conduct caused the dismissal (the causation element); and (iv) the defendant must not be able to offer an overriding justification for the dismissal (the absence of justification element). *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 941 (1996).

BNSF argues that even if the first two elements are met, Snapp cannot establish causation between the policy-linked conduct and his termination. It argues that Snapp was terminated because he did not secure a position at BNSF within the 60 day timeframe required by BNSF policy.

No genuine issue of material fact exists in these circumstances. BNSF's justification provides for Snapp's termination is completely divorced from any possible public policy at issue. Therefore, BNSF's Motion for Summary Judgment on Snapp's wrongful discharge claim is GRANTED.

### 3. Medical Records.

Snapp claims that BNSF invaded his privacy by accessing his medical records without his consent and using those records to justify Snapp's termination. Snapp alleges that he had a reasonable expectation that his personal medical records would remain confidential according to

Washington's Health Care Disclosure Act ("HCDA"), RCW 70.02.  Snapp alleges that BNSF self-insures its employee medical care benefit plan, and assumedly is a "health care provider" who disclosed "health care information" without "patient authority."  (*See* RCW 70.02).

The HCDA regulates disclosures and access to health care information and allows a private cause of action against a health care provider who does not comply with the Act.  Under the HCDA, a health care provider may not disclose health care information without the patient's authorization. *See* RCW 70.02.170; *Hines v. Todd Pacific Shipyards Corp.*, 127 Wn. App. 356, 367, 112 P.3d 522 (2005).

Snapp's claims fail for at least two reasons. First, HCDA does not apply to BNSF because BNSF is not a "health care provider." RCW 70.02.170; *Hines*, 127 Wn. App. at 366-68 (finding that the HCDA did not apply to employers).  According to RCW 70.02.010(9), a health care provider is "a person who is licensed, certified, registered, or otherwise authorized by the law of this state to provide health care in the ordinary course of business or practice of a profession."  Here, that definition has not been met.  Cigna, a third-party health insurance provider, administers medical benefits of BNSF employees.

Second, Snapp authorized the release of his medical records to BNSF.   Snapp signed a written release allowing Cigna to provide "any and all information" about Snapp's long-term disability claim to "any Agent/Broker working on behalf of Burlington Northern Santa Fe." (Dep. Ex. 168).  The release noted that BNSF could use any released medical information for "evaluation to return to work at BNSF."  (*Id.*).

Finally, Snapp also references a claim under the "Federal Standard of Privacy of Individually Identifiable Health Information, [45] C.F.R. 164." (Pl.'s Second Am. Compl. at ¶ 8.5).  But it is unclear whether this is a different cause of action.  Regardless, Snapp has not provided any evidence in support of this claim.  BNSF's Motion for Summary Judgment on Snapp's HCDA violation claim is GRANTED.

### 4. Breach of Confidence.

Snapp claims that BNSF improperly "used his shared medical information as a basis for refusing to hire him, re-instate him, and or to terminate him." (Pl.'s Second Am. Compl. at ¶ 9.4).  BNSF maintains that there is no evidence that BNSF improperly used Snapp's medical records.

BNSF correctly states that Washington has not recognized breach of confidence as a common law cause of action. *See Hines,* 127 Wn. App. at 370 (affirming summary judgment dismissal of employee's breach of confidentiality common law claim); *see also Humphers v. First Interstate Bank*, 696 P.2d 527 (1985) ("But a legal duty not to speak, unless voluntarily assumed in entering the relationship, will not be imposed by courts or jurors in the name of custom or reasonable expectations.").

Snapp has provided no factual support for this claim. BNSF's Motion for Summary Judgment on Snapp's breach of confidence claim is GRANTED.

\* \* \*

BNSF's Motion for Summary Judgment on all of Snapp's claims is GRANTED, and his Complaint is DISMISSED with prejudice.

IT IS SO ORDERED.

Dated this 3rd day of August, 2012.

Ronald B. Leighton
United States District Judge